COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Haley and Beales
Argued at Alexandria, Virginia


NICOLE KANDILL

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0036-08-4                  JUDGE RANDOLPH A. BEALES
                                                      DECEMBER 2, 2008

ERIC KANDILL


                FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                          Gordon F. Willis, Judge

            Lawrence D. Diehl (Brandy M. Poss; Barnes & Diehl, P.C., on
            brief), for appellant.

            Daniel J. Travostino for appellee.


        Nicole Kandill (mother) appeals from a final decree of divorce entered by the Stafford

County Circuit Court on December 10, 2007.  In particular, she argues that the trial court erred in

finding that a material change in circumstances had occurred since entry of a child support order by

the Stafford County Juvenile and Domestic Relations (JDR) Court.[1]  Mother also asks this Court to

award appellate attorney's fees and costs to her.  Father also asks for his attorney's fees and costs.

We agree with mother that the trial court erred in finding a material change in circumstances had

occurred, but we decline the invitation to award attorney's fees to the parties.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Mother listed several Questions Presented in her appeal.  However, as we find the trial
court erred in finding a material change in circumstances occurred, her remaining substantive
questions are moot because they ask this Court to consider errors in the new child support
calculations.  Appellate courts do not address moot questions.  See Commonwealth v. Harley,
256 Va. 216, 219, 504 S.E.2d 852, 854 (1998) (noting the Supreme Court "traditionally declines
to participate" in the speculation required to address moot questions).

I.  Background

The parties were married in 1997.  Their first child was born in April 1998, and mother gave birth to twins in July 2003.  Less then four months after the birth of their twins, the parties separated.

Mother and father reached an agreement (PSA) regarding their property, spousal support, and child support.  They took the PSA to the JDR court and had a consent order entered on February 24, 2004.  This order, which adopted the provisions of the PSA, required that father pay $4,000 per month in child support to mother.  Father provided medical insurance for the children, which was free to him through his workplace.  Each parent was ordered, pursuant to the PSA, to pay one-half of the children's uncovered medical expenses.

A 2004 tax return, presented during the divorce proceedings in circuit court, showed that father made $96,575 in 2004 from his job at a car dealership.  Father also earned money "on the side" by arranging for car repairs.

Mother was not working during 2004, in part because the twins had health problems that required mother to spend a significant amount of her time caring for them.  By the time the final decree of divorce was entered in 2007, their health had improved significantly.

After the parties separated, father began living with his girlfriend, who gave birth to father's fourth child in December 2005.  Also in 2005, father purchased rental property on which he collected rent of $1,600 per month, but paid a mortgage on that property of $2,600 per month.  This mortgage was higher than the actual value of the rental property because father elected to borrow extra money to pay off various bills.  Father also purchased a home for himself and his new family.

After the JDR court entered the 2004 child support order, father continued to work for the car dealership and earn money "on the side."  His 2006 tax return showed income of $106,979

from his regular job, after taking into account a loss on his rental property. Calculations using his September 8, 2007 pay stub suggested that father would earn over $120,000 in 2007 from his regular job.

Father has saved $43,000 in a CD since the parties signed the PSA, in addition to buying real estate. He continued to contribute to a 401K, increasing that contribution in 2007. Father's bank account records showed he made significant, large deposits each month. When asked about his financial condition during the divorce proceedings, husband admitted that nothing had "changed with regard to [his] ability to pay" the $4,000 per month in child support set by the 2004 JDR order. Father also testified that nothing had "changed with regard to [the children's] need for this money."

Prior to entry of the 2007 final decree, mother began working from home, but by the time of the divorce hearings had not yet made a profit. She had also applied for a job with the school system, but had not received a response.

When father filed for divorce in 2007, he requested a determination on child support, stating that "material changes of circumstance" had occurred since entry of the JDR order. He did not ask the trial court to impute income to mother, he did not present any evidence during the related hearings that the cost of raising the three children had decreased, and he did not present any evidence of increased expenses related solely to providing support for the new child.

The trial court issued an opinion letter on November 27, 2007, finding a material change of circumstances had occurred since the consent order. The court explained:

> Specifically, the parties' children are older and closer to reaching school age, their health has improved and they are in good health at this time, and Mr. Kandill has fathered another child . . . for whom he provides support.

The court noted that mother had "zero income," determined father's monthly income was $12,367.18, and ordered father to pay $2,064 per month in child support based on the child support guidelines found in Code § 20-108.2.

## II. Analysis

The parties agree that, before the trial court could reduce the amount of child support, father needed to prove a material change in circumstances had occurred since entry of the 2004 JDR order. In order to justify a reduction in previously ordered child support, changes must be material to the needs of the children and the parents' ability to pay. See Yohay v. Ryan, 4 Va. App. 559, 566, 359 S.E.2d 320, 324 (1987) ("[T]he trial court must assess whether the requested reduction, based on a material change in circumstances, is justified in light of the overall circumstances of both parties and the impact on the needs of the children.").

Father points to three changes that he argues support the trial court's determination that a material change in circumstances occurred since 2004: 1) the children were older and healthier, so mother could go to work, 2) father's real estate investment did not produce additional income, and 3) father now had another child. However, none of these changes affected the children's need for support or their parents' ability to support the children. Id.

Father's first point regarding the health of the twins does not address the children's needs or mother's ability to contribute to the children's financial support. The children continued to need food, clothing, and housing, even though they were older and healthier. No evidence produced at trial actually indicated that the expense of raising the children had truly decreased, as father conceded in his testimony. Father did not provide evidence on the health care costs of the twins, either before or after the entry of the JDR order. The simple fact that their health had improved did not prove that mother needed less money to take care of them, especially as the children had health insurance during their illness. The parties agreed that mother's financial

situation had not changed since the JDR order was entered, and father did not ask that the trial court impute income to her.[2] Although some changes in the day-to-day care of the children had occurred since the 2004 JDR order, no evidence specifically established that these changes decreased the cost of caring for the children. Therefore, we find that the changes to the children's health and age,[3] and the resulting change in mother's ability to work, did not, as a matter of law, justify a change in the amount of child support, especially as father did not present any evidence regarding a specific, financial change related to these issues.

Father's second argument is based on his allegedly lower income and poor real estate investments. However, the evidence does not support father's contentions. The tax returns from 2004 indicated father grossed $96,575 a year from his employer, the Brown Lincoln Mercury car dealership. In that same year, he voluntarily agreed to pay $4,000 per month in child support. By 2006, excluding the loss from his rental property included on his tax returns, father grossed $117,038 from his regular job. By the middle of September 2007, he had grossed over $85,000, putting him on track to gross over $122,000 for 2007. Father conceded at trial during his testimony that his ability to pay $4,000 per month in child support had not changed since 2004, and father's counsel essentially conceded during oral argument before this Court that father's income had increased since 2004. Therefore, the evidence established that father's income had, if anything, increased since 2004, not decreased. While that increase may be a change in

---

[2] In addition to failing to ask the court to impute income to mother, father also did not present any evidence on mother's potential earning capacity that would have allowed the court to impute a specific income to her.

[3] The Supreme Court found in one case that the expense of raising children actually increased as the children aged. See Barnes v. Craig, 202 Va. 229, 232, 117 S.E.2d 63, 65 (1960) ("The children are now nine years older than when the decree was entered and, of necessity, more money is required for their support.").

circumstances, it is not a change that would present proof in support of an argument for *decreasing* child support.

Father does claim some lost income. He claims that he lost money on his investment in rental property. However, any "loss" attributed to his rental property was created when father decided to borrow additional money in order to pay off some personal debt. Therefore, the record does not support the conclusion that father "lost" money on this investment, especially as he was purchasing equity in the property and acquired a tax deduction for the mortgage. In any event, father's allegedly poor investment decision would not justify a downward reduction in his support payments. See Antonelli v. Antonelli, 242 Va. 152, 154, 409 S.E.2d 117, 119 (1991) ("[A] father seeking a reduction in support payments must also make a full and clear disclosure about his ability to pay, and he must show his claimed lack of ability to pay is not due to his own voluntary act or because of his neglect."). In short, the children should not suffer because father decided to invest in real estate and the value of that real estate then went down when an unfavorable real estate market developed.

Finally, father argues that the birth of his fourth child established sufficient justification for a reduction in his child support to the other three children. Father is correct that the trial court could consider his actual monetary support of his new child as one factor in determining whether a material change in circumstances had occurred. See Farley v. Liskey, 12 Va. App. 1, 3-4, 401 S.E.2d 897, 898-99 (1991). However, "the *existence* of a party's financial responsibility for such a child or children shall not of itself constitute a material change in circumstances for modifying a previous order of child support in any modification proceeding." Code § 20-108.2(C) (emphasis added). Therefore, father needed to establish more than the fact that he had fathered another child and was generally supporting the child. He needed to present some evidence that his *actual financial support* of his fourth child was sufficient to create a material

change in his circumstances and this additional, actual support justified a reduction in the previously ordered support for the three other children. Simply fathering another child is not sufficient proof of a material change in circumstances. See Code § 20-108.2(C).

Father presented only minimal evidence regarding his increased expenses after the birth of the fourth child. He listed only two expenses (other than support) under "Childcare Expenses" on his monthly income and expenses sheet -- $100 per month for clothes and $1,083 per month for childcare. Nothing in the record established which child(ren)'s clothing cost father $100 per month – the three children from his first marriage or the fourth child. The childcare expense, likewise, was not explained. However, since his girlfriend worked, the childcare cost was most likely daycare for their child. The record does not indicate how much money father's girlfriend contributed to the care of her child. At most, however, if both these expenses are attributed to the raising of the fourth child, the increase in father's expenses is $14,196 per year. The increase in father's income from the dealership between 2004 and 2007 was more than sufficient to cover this additional expense. Father conceded as much when he testified that he could still afford to pay the $4,000 per month in child support to mother. Therefore, this change in circumstances was not sufficient to justify changing the support award.

### III. Conclusion

For the foregoing reasons, we find that the trial court erred in finding father had proven a material change in circumstances that justified a reduction in his child support obligation. Therefore, we remand this case to the trial court for it to reinstate the amount of child support awarded in 2004. We deny both parties' requests for an award of appellate attorney's fees and costs.

<u>Reversed and remanded.</u>