**Alexandria**

LOIS M. HOLLIS

v.

REX R. HOLLIS

No. 0458-92-4

Decided March 9, 1993

COUNSEL

John Wasowicz (John E. Kilcarr; Kilcarr & Volzer, on brief), for appellant.

Lynn E. Berry (Horkan & Berry, on brief), for appellee.

OPINION

**BARROW, J.**—In this appeal from a final decree of divorce, we address issues relating to the defense of connivance. We hold that a finding of connivance, the prior consent of one spouse to the misconduct of another, was sufficiently supported by the evidence. We further hold that the defense of connivance need not be expressly asserted in the pleadings.

Responding to the wife's allegation of the husband's adultery, the husband admitted that he was engaged in an adulterous relationship with another woman before the husband and wife separated. The wife asserted in her cross-bill for divorce that the husband's adultery began ''on or about May 24, 1990.'' The husband acknowledged that he had lived together with another woman since March 22, 1990, and had had sexual relations with the other woman. The nature of the relationship was corroborated by the testimony of the other woman and the testimony of a private investigator.

The husband, however, asserted that his wife had urged him to date the other woman and that he had entered into a relationship only after his wife encouraged it. He introduced into evidence a handwritten letter from the wife dated February 4, 1990, which he received before an intimate relationship with the other woman began. The wife wrote that

she wished to be free from her marriage but was afraid that the husband would "marry some bimbo." She wrote that she had seen the husband talking to the other woman at a Christmas party and hoped that the husband would fall in love with the other woman so that the wife could get out of her marriage. She said, "I want so badly for [the husband] to fall in love and share the rest of his life with someone who really loves him; someone like [the other woman], or even [the other woman]."

The wife wrote another letter dated February 22, 1990, which she gave to her husband in that month. She titled the letter, "Things I want [the husband and the other woman] to do before the divorce." In it she said that she wanted her husband and the other woman to "rent an apartment and live together for one year as man and wife everyday."

The husband and the other woman testified that they first had sexual relations at the Greenbrier Hotel the third weekend in February, 1990. While there, they received flowers and a card from the wife. The card said, "My very best wishes to you both today, to your new beginning."

Finally, the husband and wife signed a document dated May 23, 1990, stating that the wife "consent[ed] to [the husband] moving out of our home." In it she also said that she was "aware that this could entail his moving in and living with another female." She agreed that she would not "use this against him as grounds for divorce or punitive action."

The trial court found that the husband's adultery resulted from the wife's "connivance and procurement" and granted the husband a divorce on no-fault grounds. The wife contends that the evidence does not support this finding and that the husband's failure to plead connivance barred his assertion of it.

■ Connivance has been defined as "the plaintiff's consent, express or implied, to the misconduct alleged as a ground for divorce." *Greene v. Greene*, 15 N.C. App. 314, 316, 190 S.E.2d 258, 260 (1972). Connivance denotes "direction, influence, personal exertion, or other action with knowledge and belief that such action would produce certain results and which results are produced." *Id.* The defense of connivance is based on "the maxim '*volenti non fit injuria*,' or that one is not legally injured if he has consented to the act complained of

or was willing that it should occur." *Id.* Other courts have similarly defined connivance. *McMillan v. McMillan*, 120 Fla. 209, 214, 162 So. 524, 526 (1935); *Atha v. Atha*, 94 N.J. Eq. 692, 121 A. 301 (1923).

Condonation, on the other hand, is one spouse's forgiveness of the other spouse's adulterous misconduct, usually evidenced by resumption and continuation of apparently normal matrimonial relations. *Williams v. Williams*, 188 Va. 543, 551, 50 S.E.2d 277, 280 (1948); *Martin v. Martin*, 166 Va. 109, 116, 184 S.E. 220, 224 (1936); *Cutlip v. Cutlip*, 8 Va. App. 618, 621, 383 S.E.2d 273, 275 (1989). Knowledge of the misconduct is necessary before condonation may occur. *Martin v. Martin*, 166 Va. at 116, 184 S.E. at 224. Condonation, it follows, may only occur after the occurrence of the misconduct and differs from connivance in when the act of consent or, in the case of connivance, influence occurs. While condonation occurs after the misconduct, connivance occurs before the misconduct.

Connivance is the consent, either expressed or implied, of one spouse to the proposed misconduct of the other spouse. One who consents to another's misconduct may not seek a divorce based on the misconduct.

The evidence supported the trial court's finding of the wife's connivance in the husband's misconduct. Her letters and the note accompanying the flowers amply support the finding that she encouraged, as well as consented to, the husband's adulterous relationship.

Furthermore, the husband was not barred from asserting this defense because he had not expressly pleaded the defense of connivance or condonation. His answer to the wife's cross-bill expressly denied her allegations that he had committed adultery that she had not procured or condoned. Furthermore, a court may, as with condonation, "deny a divorce where it appears from the record that the injured party has" connived to bring about the misconduct complained of. *McKee v. McKee*, 206 Va. 527, 532, 145 S.E.2d 163, 166 (1965).

For these reasons, we affirm the final decree of divorce.

*Affirmed.*

Koontz, C.J., and Moon, J., concurred.